UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK_____

CHRISTA  CUTRONA,

                    Plaintiff,


        vs.                                              COMPLAINT

                                                Jury Trial Demanded


TIMOTHY HOWARD, JOHN GARCIA
JOHN GREENAN, WILLIAM J. COOLEY
SANDRA AMOIA, THOMAS DIINA,
MICHAEL PHILLIPS, and JAMES BALYS,
                    Defendants

_____

## INTRODUCTION

1.     This is a complaint for violation of Plaintiff's First Amendment right to freedom of speech brought pursuant to 42 U.S.C. § 1983, and discrimination on the basis of gender in violation of the New York State Human Rights Law.

The lawsuit addresses deliberate disregard of their legal obligations to the incarcerated individuals committed to their care by high-ranking officials of the Erie County Sheriff's Department in two successive administrations, the efforts of Plaintiff Christa Cutrona, a Registered Nurse, to protect the incarcerated persons, and the steps taken by the Defendants to silence and discredit that nurse, which include retaliation, and criminal prosecution.

Plaintiff Cutrona's state law claims address a continuing pattern of discrimination in employment on the basis of gender beginning in March of 2021  This lawsuit seeks damages and declaratory and injunctive relief.

**JURISDICTION AND VENUE**

2.      Jurisdiction is conferred upon this Court by 28 USC §§ 1331 and 1343; jurisdiction over Plaintiff's state law claims is conferred upon the Court by 28 USC §§ 1367.

3.      All conditions precedent to the filing of suit have been performed or have occurred.

4.      Venue is properly laid in the Western District of New York pursuant to 28 USC § 1391(b) because the Defendants are located in the Western District of New York, and because the events giving rise to the Complaint occurred in the Western District of New York.

**PARTIES**

5.      Plaintiff, Christa Cutrona is a former employee of the County of Erie.  As is set forth in detail *below,* between 2012 and May of 2015, Plaintiff, Christa Cutrona was Director of Nursing; from May of 2015 until 2016 she was the Director of the Erie County Department of Health's Correctional Health Division; from 2016 until December of 2021, she was the Director of the Correctional Health Division within the Sheriff's Department; and from January of 2022 until July of 2022, she was Director of Correctional Health within the Jail Management Division of the Erie County Sheriff's Department.

6.      Defendant Timothy Howard was the Sheriff of Erie County from the date of Plaintiff's hire until January 1, 2022.  He is sued in his personal and official capacities.

7.      Defendant John Garcia was the Sheriff of Erie County January 1, 2022 until the present.  He is sued in his personal and official capacities.

8.    Defendant John Greenan was Chief of Administration of the Erie County Sheriff's Department from 2014 until 2020, and Under Sheriff of Erie County from 2020 until December 31, 2021.  He is sued in his personal and official capacities.

9.    Defendant William J. Cooley was Under Sheriff of Erie County from January 1, 2022 until the present.  He is sued in his personal and official capacities.

10.    Defendant Sandra Amoia was First Deputy Superintendent for Compliance of the Jail Management Division of the Erie County Sheriff's Department from January 1, 2022 until the present.  She is sued in her personal and official capacities.

11.    Defendant Thomas Diina was Superintendent of the Jail Management Division of the Erie County Sheriff's Department from the date of Plaintiff's hire until December 31, 2021. He is sued in his personal and official capacities

12.    Defendant Michael Phillips was Superintendent of the Jail Management Division of the Erie County Sheriff's Department from January 1, 2022 until the present.  He is sued in his personal and official capacities.

13.    At all times relevant to this matter Defendant James Balys held the rank of captain within the Jail Management Division.  He was First Deputy of Compliance within the Correctional Health  Division of the Erie County Sheriff's Department from July of 2021 to January of 2022. In January 2022 Defendant Balys was named Chief of Compliance in the Jail Management Division.  He is sued in his personal and official capacities.

### BACKGROUND:  Federal Litigation and Consent Decree

14.    On September 30, 2009, the United States of America, represented by the US Department of Justice ("USDoJ"), filed a complaint against Erie County, New York, alleging

that certain conditions at the Erie County Holding Center (ECHC) and the Erie County

Correctional Facility (ECCF) violated the constitutional rights of persons confined in ECHC and

ECCF. The complaint was assigned docket number 09-cv-849 and assigned to the Honorable

William M. Skretny. *See* 09-cv-849-WMS-JJM, Item No.1.

15.    On August 18, 2011, the parties filed a Stipulated Order of Dismissal, *See* 09-cv-

849-WMS-JJM, Item No. 225-1, which was "so Ordered" by Judge Skretny on August 26, 2011.

*See* 09-cv-849-WMS-JJM, Item NO. 227.

16.    Pursuant to that Stipulation and Order, the County of Erie agreed to *inter alia*:

a.    Continue to develop and implement policies and procedures to provide prisoners

with a safe and secure environment and continue to take all reasonable steps to

protect them from harm;

b.    Provide mental health care pursuant to stipulated provisions relating to suicide

prevention, screening, referrals to outside providers and specific provisions for

mentally ill prisoners;

c.    Ensure that clinical decisions and actions regarding health care provided to

inmates are the sole responsibility of qualified health professionals;

d.    Ensure inmates' medical privacy and confidentiality;

e.    Improve medical record keeping;

f.    Ensure that all medications are appropriately prescribed, stored, controlled,

dispensed and administered;

g.    Ensure that inmates have access to care to meet their serious medical needs,

including, but not limited to, emergency care, follow-up care, chronic disease

care, dental care, and pre-natal care. *Id.*

17.     Pursuant to the Stipulated Order of Dismissal, the County agreed to create a Correctional Health Division within the Erie County Department of Health that was charged with the responsibility of implementing the medical-related aspects of the Order of Dismissal.

18.     The Stipulated Order of Dismissal included a provision that the agreement would not terminate until after the County had achieved and maintained substantial compliance with all the provisions of the Stipulated order for eighteen consecutive months.

19.     The Jail Management Division achieved substantial compliance in 2013 or 2014; the Correctional Health Division reached sustained compliance in October of 2019; on information and belief, the Forensic Mental Health Division reached substantial compliance in 2021.

20.     On June 9, 2023 the parties jointly moved to terminate the stipulated Order of Dismissal and for the Court to enter Judgment of Dismissal. Item No. 335.

21.     The Court entered a Final Order of Dismissal on June 13, 2023.  Item No. 336.


**BACKGROUND:  Missions of the Jail Management and Correctional Health Divisions**

22.     The Erie County Sheriff's Department has numerous divisions, one of which is the Jail Management Division, which operates the Erie County Holding Center ("ECHC") and the Erie County Correctional Facility ("ECCF").

23.     The Correctional Health Division was identified as a separate Division of the Erie County Sheriff, along with the Division of Public Services and the Jail Management Division in the 2021 and 2024 Erie County Budgets.

24.     The Mission Statement of the Jail Management Division set forth in the Erie County Annual Budget for 2021 includes: "maintaining safe, secure and humane detention and correctional facilities" and "Enforce all laws, ordinances rules and regulations."

25.     The top priority of the Jail Management Division for 2021 set forth in the Budget is: "Maintain a safe and secure environment."

26.     The Mission Statement of the Correctional Health Division set forth in the Erie County Annual Budget for 2021 includes: "to pursue and establish the highest ideals and ethical standards in the provision of health services to those who are incarcerated."


## STATEMENT OF FACTS

27.     Pursuant to the Stipulated Order, in 09-cv-849, Plaintiff, Christa Cutrona was hired as the Director of Nursing, Correctional Health Division, under the supervision of the Erie County Department of Health in 2012.

28.     At the time of Plaintiff's hire, Mark Wipperman was Under Sheriff, Michael Reardon was First Deputy Superintendent/Compliance Officer, and Thomas Diina was Superintendent of the Jail Management Division.

29.     The First Deputy Superintendent/Compliance Officer position was within the Jail Management Division of the Erie County Sheriff's Department and reported directly to the Under Sheriff.

30.     In 2014, Defendant John Greenan was appointed Chief of Administration of the Erie County Sheriff's Department.

31.     In May of 2015, Plaintiff Cutrona was promoted to Director of the Correctional Health Division.

32.     The Director of the Correctional Health Division was a Civil Service position with a formal job description approved by the Erie County Legislature, and a line item in the Sheriff's Department budget.

33.     Plaintiff's duties set forth in the job description for Director of Correctional Health Services included, but were not limited to:

   a.  Direction and delivery of all health services and related services to inmates housed in the Erie County Youth Detention Facility, (ECYDF), Erie County Correctional Facility (ECCF), and Erie County Holding Center (ECHC);

   b.  Supervision of health service staff;

   c.  Direction of use, delivery, ordering, maintenance, storage, control, disposal and recording of medical and pharmaceutical supplies and equipment;

   d.  Development of policies and procedures for all aspects of delivery of health care services;

   e.  Coordination of the use of public and private  health care facilities as required for care of inmates;

   f.  Coordination with the Erie County Forensic Mental Health Department;

   g.  Preparation of the yearly budget for the Division of Correctional Health Services; and

   h.  Preparation of statistical documentation and the year-end report for the Correctional Health Division.

34.     In 2016, the Division of Correctional Health was relocated from the Erie County Department of Health to the Eric County Sheriff's Department, and established as a Division of the Sheriff's Department parallel to the Jail Management Division.

35.    As Director of the Correctional Health Division, Plaintiff reported directly to the Erie County Commissioner of Health until 2016, and to the Under Sheriff from January 1, 2016 to January of 2022.

36.    In 2017, the Compliance Officer position was placed in the Correctional Health Division.

37.    The relocation of the Correctional Health Division was approved by the Erie County Legislature and the USDoJ.

38.    The USDoJ conditioned its approval of the relocation of the Correctional Health Division upon the Correctional Health Division remaining an independent Division of the Sheriff's Department.

39.    Upon the Correctional Health Division's relocation to the Sheriff's Department, Plaintiff was placed on the Sheriff Command staff.

40.    Plaintiff was the only woman on the Sheriff Command staff until December of 2021.

41.    Plaintiff's job description and duties did not change when her position was relocated from the Department of Health to the Sheriff's Department.

42.    As part of her regular duties, Plaintiff Cutrona provided frequent reports to the Under Sheriff on quality data, including, but not limited to monthly summaries.

43.    The First Deputy Superintendent/Compliance Officer utilized information contained in Plaintiff's reports to the Under Sheriff to prepare reports for submission to the US DoJ, as mandated by the Stipulation and Order in 09-cv-849.

44.    In August of 2020, Defendant John Greenan was appointed Under Sheriff.

45.    In January of 2021 Defendant Howard announced that he would not seek re-election as Erie County Sheriff.

46.    From May of 2015 until March of 2021, Plaintiff worked closely with the First Deputy Superintendent/Compliance Officer to implement the provisions of the Stipulation of Dismissal in 09-cv-849.

47.    In March of 2021 Michael Reardon was removed from the position First Deputy Superintendent/Compliance Officer, and transferred to the Courts Division of the Sheriff's Department.

48.    Upon Mr. Reardon's reassignment, Defendant Greenan assumed responsibility for compliance duties, in addition to Greenan's other duties.

49.    As the Director of the Correctional Health Division, Plaintiff was the direct advocate to the Under Sheriff and Jail Management Division regarding concerns related to access to medical care and medical safety.

50.    On  or about March 31, 2021, Plaintiff sent a fourteen-page letter to Defendant Timothy Howard, detailing the accomplishments of the Correctional Health Division from 2015 to date, and advising Defendant Howard that the Correctional Health Division's goals and accomplishments were jeopardized by the removal of Reardon from his Compliance Officer position.

51.    Plaintiff's duties included bringing violations of policy and procedure, policy edits, and concerns regarding incidents that had occurred in the jails to Defendant Diina's attention.

52.    Until March of 2021, Plaintiff communicated with Defendant Diina through Mr. Reardon.

53.     After Mr. Reardon was removed from the position of First Deputy Superintendent/Compliance Officer, there was no longer a liaison between the Correctional Health Division and the Jail Management Division, and Plaintiff was required to interact directly with Jail Superintendent Defendant Thomas Diina.

54.     As of March 2021, Plaintiff was the only woman holding a command-level position in the Sheriff's Department.

55.     Defendant Diina was hostile to Plaintiff as a woman in a position of authority and subjected her to verbal abuse and bullying.

56.     Defendant Diina ignored communications from Plaintiff or responded to her requests in a hostile and aggressive manner.

57.     When Defendant Diina did respond to Plaintiff's emails and to emails from other women within the Correctional Health Division, Diina's emails attempted intimidation and offensiveness.

58.     Defendant Diina was confrontational in his dealings with Plaintiff and attempted to bully her.

59.     Defendant Diina refused to participate in inter-departmental meetings with Plaintiff, and excluded Plaintiff from meetings to discuss challenges and concerns identified by the Correctional Health Division.

60.     Defendant Diina refused to include Plaintiff in discussions of amendments to Jail policies that had implications for correctional health, including policies governing the use of OC spray (pepper spray), camera recording of inmates, and notification to the Correctional Health Division of inmates' placement on administrative segregation.

61.    As one example of Defendant Diina's actions, in the middle of March of 2021, ECHC was on lockdown, and security staff would not permit Correctional Health Division nurses to administer prescribed medications to inmates.

62.    During the latter part of March 2021, one inmate in ECHC died, and another inmate was found unresponsive – the second inmate survived after transport to the hospital.

63.    Plaintiff sent emails to Defendant Diina expressing concern about the denial of medical care to inmates, and her staff's inability to obtain access to inmates during the lockdown.

64.    Defendant Diina did not respond.

65.    Defendant Diina refused to respond to Plaintiff's request for information about the Jail Management Division's follow-up to a Prison Rape Elimination Act ("PREA" 34 USC § 3401, et seq.) complaint in mid-April of 2021.

66.    Beginning in the summer of 2021, Defendant Diina invited a male contract employee of the Correctional Health Division, Chief Medical Officer Dr. Kevin McGee to meetings in place of, or in addition to, Plaintiff.

67.    Dr. McGee had been hired to oversee the medical practice within the ECCF and ECHC; in that capacity he reported to Plaintiff.

68.    In late May 2021, Plaintiff informed Defendant Greenan that Defendant Diina was harassing her because she was a woman.

69.    Defendant Greenan encouraged Plaintiff to file a complaint with the County's Equal Employment Opportunity ("EEO") office.

70.    Plaintiff filed an EEO complaint on or about June 3, 2021.

71.    Plaintiff's EEO complaint was dismissed as unfounded by the County EEO office on or about June 18, 2021.

72.    In May of 2021 there was an inmate disturbance at ECCF.

73.    In June of 2021, Plaintiff was contacted directly by a medical liaison from the New York State Commission of Corrections ("SCOC") and asked whether the Correctional Health Division had received complaints relating to the disturbance at ECHC in May.

74.    Plaintiff reviewed the medical and forensic mental health records for the relevant period, and found numerous complaints of beatings by corrections staff, denial of food for several days, denial of bedding, placement in cells fouled with feces and urine, denial of showers and changes of clothing for up to a week, and other constitutional and civil rights violations.

75.    Plaintiff reported her findings to the SCOC liaison.

76.    At a command meeting with Defendant Greenan, Plaintiff informed Greenan that she had been contacted by the SCOC, and had reported her findings.

77.    Defendant Greenan was infuriated that Plaintiff had communicated directly with the SCOC, and told her that the Jail Management Division had taken care of the issues.

78.    Defendant Greenan told Plaintiff to "shut [her] mouth."

79.    Thereafter, Defendant Greenan frequently ignored Plaintiff's medically supported recommendations and reports.

80.    On or about June 2, 2021, Defendant Greenan advised Plaintiff that he was considering assigning Captain James Balys to the Compliance Officer position.

81.    Defendant Balys lacked the skills and experience required for the position.

82.    Plaintiff advised Defendant Greenan that she believed Defendant Balys was not qualified for the position due to Balys' lack of knowledge of medical issues and lack of administrative experience.

83.    On or about June 17, 2021, Defendant Greenan advised Plaintiff that the Sheriff was appointing Defendant Balys as Compliance Officer.

84.    After Defendant Balys' appointment, Defendant Greenan modified the skills and experience requirements for the Compliance Officer position to match Defendant Balys' qualifications.

85.    After Defendant Balys' appointment as Compliance Officer and the EEO Office's dismissal of Plaintiff's complaint, Defendant Diina discontinued communicating directly with Plaintiff.

86.    Instead, Defendant Diina communicated with Plaintiff primarily through Defendant Balys.

87.    Defendant Balys continued to treat Plaintiff in the same demeaning and hostile fashion as Defendant Diina had done.

88.    On or about June 25, 2025, Plaintiff met with Defendant Balys, and advised him that her goal was to help him succeed.

89.    On or about June 28, 2021, Plaintiff emailed Defendant Balys copies of policies, documents, manuals, etc., relevant and necessary to the performance of the Compliance Officer position.

90.    Beginning in July 2021, Defendant Greenan began including Dr. McGee, a male contract employee who reported to Plaintiff, to regular command staff meetings.

91.     Defendants Greenan and Balys excluded Plaintiff from the discussions at the meetings, instead addressing comments and questions to Dr. McGee.

92.     On or about July 7, 2021, at a meeting with Defendants Balys and Greenan, Plaintiff advised that she had noticed a pattern of inmates reporting constitutional and civil rights violations (including excessive use of force, and cruel and unusual punishment) to medical staff (who were documenting those reports in the medical records), but that there were no corresponding formal investigations of the complaints being undertaken by the Professional Standards Division.

93.     At the same meeting Plaintiff advised Defendants Greenan and Balys of the need to review uses of OC spray (pepper spray), the restraint chair, and Prison Rape Elimination Act ("PREA" 34 USC § 3401, et seq.) reporting and investigation.

94.     Defendants Greenan and Balys ignored Plaintiff's recommendations.

95.     In August of 2021, Plaintiff emailed Defendants Greenan and Balys regarding inmates arriving for medical care for injuries, without there being corresponding Unusual Incident reports prepared by the Jail Management Division.

96.     From July of 2021 through September 2021, Plaintiff advised Defendant Balys and Defendant Greenan in writing and in face-to-face meetings of Plaintiff's concerns relating to inmate health, including, but not limited to

   a.   Shortage of staff (including but not limited to Nurse Practitioner, Registered Nurses and Licensed Practical Nurses) due to the elimination of 23 positions from the Correctional Health Division;

   b.   Significant increase in the number of inmate-on-inmate assaults and hospitalizations for injuries sustained during the incidents;

   c.   Increased hospitalizations due to ingestion of foreign bodies and contraband;

   d.   Failure to follow legally mandated protocols for providing medical care in response to PREA complaints;

   e.   Failure to investigate inmate complaints to medical staff of civil rights violations by security staff;

   f.   Delays in receiving necessary medical supplies; and

   g.   Failure to comply with guidelines governing provision of mental health care.

97.    Defendants Greenan and Balys did not address Plaintiff's concerns.

98.    On or about October 6, 2021 Plaintiff emailed Defendant Greenan advising him that despite significant reductions in the total jail population since 2019, inmate visits to outside emergency rooms had doubled since the prior year; Plaintiff provided detailed data in support of that assessment.

99.    Defendants Greenan did not address Plaintiff's concerns.

100.    From October 2021 through the end of December 2021, Defendants Greenan, Diina, and Balys continued to exclude Plaintiff from the decision making process and to ignore her efforts to communicate and work with them regarding areas within the scope of Plaintiff's responsibilities.

101.    In mid-October of 2021 Plaintiff contacted an attorney in the Department of Justice ("DoJ") who was involved in the litigation of 09-cv-849 to report violations of the consent decree in that case.

102.    Plaintiff explained that she had tried to address the concerns with the relevant County officials without success.

103.    Citing her medical oath, Plaintiff described substantial increases in incidents that required medical assessment and intervention, increased inmate injuries, and violations of the Consent Decree in 09-cv-849.

104.    Plaintiff followed her text with an email in early November 2021, attaching documentation of her concerns.

105.    The DoJ attorney responded that she could not talk directly to Plaintiff about matters relating to 09-cv-849 without the permission and participation of the County's attorneys.

106.    In November 2021, Defendant John Garcia was elected Sheriff of Erie County.

107.    In November and December of 2021, Plaintiff notified Defendants Greenan and Balys of violations of the Consent Decree and applicable policy with respect to transfers of inmates to outside emergency rooms, Defendant Balys' failure to meet with the Director of Nursing on a daily basis to review daily incidents, failure to comply with the established COVID prevention  procedure, and failure of the Jail Management Division to provide shift summary reports to the Correctional Health Division administrative team.

108.    In mid-December 2021, Defendant Sheriff Garcia announced his command staff to the news media; Plaintiff was listed as the Director of Correctional Health instead of her Civil Service title which was Director of the Correctional Health Division.

109.    On or about December 28, 2021, Plaintiff received an email from Defendant Garcia's Administrative Assistant that listed the chain of command in each Division of the Sheriff's Department for the incoming administration.

110.    Plaintiff was listed third in command in the Correctional Health Division, below incoming First Deputy, Defendant Amoia, and below Kevin McGee, MD, the contract employee, who, pursuant to his contract, reported to Plaintiff.

111.    Defendant Greenan was replaced as Under Sheriff by Defendant Michael Cooley upon Defendant Garcia taking office.

112.    On or about January 9, 2022, Plaintiff emailed Defendants Garcia and Cooley with suggestions for training of staff concerning the requirements of the Consent Decree in 09-cv-849.

113.    On or about January 10, 2022, Plaintiff received a response to her January 9, 2022 email from Defendant Phillips directing Plaintiff to follow the chain of command in communicating with the Sheriff, namely Defendant Amoia, himself, and Under-Sheriff Cooley.

114.    On or about January 11, 2022 Plaintiff provided the new incoming Sheriff Administrative staff including Defendant Garcia, Defendant Cooley, Defendant, Phillips, Defendant Amoia and Defendant Greenan a bound copy of the USDoJ Stipulated Order of Dismissal, the 2021 Correctional Health Quality Report and a full version of the Correctional Health Transitional Plan for Correctional Health Division.

115.    On or about January 12, 2022, Plaintiff emailed Defendant Amoia statistics for 2011-2021 which demonstrated the significant increase in inmate visits to emergency rooms, and other medical concerns.

116.    On or about January 13, 2022, Defendant Garcia announced at the Command Staff meeting that Defendant Balys was the Chief of Compliance; Defendant Balys was also a Captain in the Teamster Union.

117.    On or about January 19, 2022, Defendant Amoia met with the Correctional Health Division administration and presented an organizational chart, prepared at the direction of Defendant Garcia.

118.    The organizational chart referenced in ¶ 117 nominally placed the Correctional Health Division under the Jail Management Division, but effectively eliminated the Correctional Health Division as a separate Division of the Sheriff's Department co-equal with the Jail Management Division.

119.    The organizational chart referenced in ¶ 117 listed Plaintiff's position within the Jail Management Division as reporting to Chief of Compliance, James Balys.

120.    Plaintiff reached out to her attorney contact in the US DoJ on or about January 3, 2022 and January 27, 2022 to provide statistical data of the increase in reportable incidents, and to bring information about perceived violations of inmates' constitutional and civil rights to the attorney's attention.

121.    In January and early February 2022, Plaintiff was excluded from meetings and communications concerning the Correctional Health Division involving both her subordinates within the Correctional Health Division and Defendants Amoia and Balys.

122.    On or about February 2, 2022, Defendant Amoia informed Plaintiff that she (Amoia) was now the head of the Correctional Health Division, and that Defendant Balys was Second in Command; Defendant Amoia also informed Plaintiff that the Chain of Command for the Correctional Health Division placed her below Defendants Amoia and Balys, and removed all of Plaintiff's administrative duties.

123.    Defendant Amoia further advised Plaintiff that her responsibilities were limited to Billing, Insurance, Budget, Material Management, and Vendors.

124.    Plaintiff advised Defendant Amoia that the organization chart and distribution of duties violated the agreement with the USDoJ, the Stipulation of Dismissal of 09-cv-847 and the

Erie County Legislature's actions in creating the Correctional Health Division as a co-equal Division of the Sheriff's Department along with the Jail Management Division.

125.    Defendant Amoia stated words to the effect of, "I never want to hear that out of your mouth again. The Sheriff gets what the Sheriff wants."

126.    Later that same day, Defendant Balys directed Plaintiff to vacate her office and remove all of her possessions from it, as he would be taking over that office.

127.    The staff reorganization described in ¶¶ 122 through 123, and memorialized in the organizational chart referenced in ¶ 117, violated the Consent Decree in 09-cv-849.

128.    The staff reorganization described in ¶¶ 122 through 123 also violated Civil Service rules and did not comply with the Erie County budget then in effect.

129.    The staff reorganization described in ¶¶ 122 through 123 effected a demotion of Plaintiff to a position with less authority and less prestige.

130.    The staff reorganization described in ¶¶ 122 through 123 was a continuation of the discriminatory exclusion of Plaintiff from decision-making and administrative responsibility that had begun in or about March of 2021.

131.    On information and belief, the actions of Defendants Garcia, Cooley, Amoia, Phillips and Balys in 2021 were a continuation of the hostile work environment and discriminatory change in the terms and conditions of Plaintiff's employment that had been initiated by Defendants Howard, Greenan, Diina and Balys beginning in March of 2021.

132.    Plaintiff contacted the Erie County Attorney, the Erie County Commissioner of Personnel, the Erie County Commissioner of Budget and the US DoJ concerning the staff reorganization.

133.    Plaintiff also contacted Defendant Greenan and expressed concern that she had been blackballed, and that medical concerns and procedures were being addressed without her participation.

134.    Defendant Greenan responded that he was no longer part of the decision-making process.

135.    On information and belief, neither Defendant Amoia nor Defendant Balys have any medical training.

136.    On or about February 8, 2022, members of the nursing staff reported to Plaintiff that all of the procedures the Correctional Health Division had established to comply with the Consent Decree and improve the Correctional Health Division were being eliminated by the new administration.

137.    On or about February 9, 2022, Plaintiff called off sick from work due to stress arising from the actions of Defendants Garcia, Cooley, Phillips, Amoia and Balys described in ¶¶ 121 to 137 herein.

138.    On or about February 14, 2022, Plaintiff was admitted to BryLin Hosp for a nervous breakdown; Plaintiff was diagnosed with major depressive disorder and anxiety

139.    Plaintiff was an inpatient at BryLin from February 14, 2022 until February 21, 2022.

140.    While Plaintiff was in the hospital, an on-duty Sheriff's deputy came to the hospital and attempted to elicit information from the hospital staff about Plaintiff's condition.

141.    BryLin did not provide HIPPA-protected information to the Sheriff's deputy

142.    Plaintiff was placed on a continuous FMLA leave starting on  February 9, 2022

143.    Beginning in approximately March of 2021, Plaintiff had begun experiencing mental health symptoms due to stress caused by Defendant Diina's, Balys' and Greenan's harassment.

144.    Towards the end of 2021, Plaintiff's symptoms escalated.

145.    Plaintiff suffered from extreme sadness, hopelessness, increased irritation, isolation, tiredness, inability to sleep, headaches.

146.    The symptoms described in ¶ 145, along with extreme hopelessness and suicidal thoughts, led to Plaintiff's admission to BryLin Hospital.

147.    While an inpatient at Brylin, Plaintiff underwent intensive counseling at minimum twice daily.

148.    Plaintiff was placed on sleep medication, antidepressants and anxiety medication.

149.    After her release from BryLin, Plaintiff attended counseling every other week, then monthly.

150.    Since February 2022, Plaintiff's doctor has prescribed increases of her antidepressant and Vrylar to help with the depression.

151.    After her release from in-patient care Plaintiff continued to treat with mental health professionals including both therapy and medication.

152.    On March 1, 2022, Plaintiff was placed on paid administrative leave for alleged misconduct; Plaintiff was not informed of what the alleged misconduct was.

153.    Plaintiff contacted her Union about the change in her title and what she perceived to be harassment and bullying to which she was subjected by Defendants Amoia and Balys; she was informed that the Union would prepare a complaint to the Public Employees Relations Board ("PERB").

154.    A PERB complaint was filed on March 1, 2022.

155.    While Plaintiff was on paid administrative leave, Defendant Balys stated in the Sheriff's main office that he and First Deputy Superintendent Phil Kuppel were going to do everything in their power to get rid of Plaintiff.

156.    On or about April 27, 2022, Plaintiff again contacted the US DoJ attorney and provided information about reviews of incidents involving potential violations of inmates' constitutional and civil rights.

157.    On or about June 13, 2022, Plaintiff was contacted by an Investigator from the Erie County District Attorney's office who asked to schedule a meeting about "some problems at the Holding Center."

158.    Plaintiff understood the call to be in response to her efforts to report violations of the Consent Decree in 09-cv-849 and the change in her job title in violation of County budget provisions and Civil Service rules, and agreed to meet with the Investigator.

159.    The Investigator did not inform Plaintiff that Plaintiff was herself a subject of Investigation.

160.    Plaintiff answered the Investigator's questions, many of which related to Plaintiff's cell phone usage.

161.    Plaintiff was puzzled by the questions, and asked the Investigator if the conversation related to Plaintiff's report of civil rights violations within the County Jails.

162.    The Investigator answered that was not the focus of the conversation, at which point Plaintiff terminated the conversation.

163.    The lack of information exacerbated Plaintiff's stress and depression.

164.    On or about July 15, 2022, after Plaintiff had been on administrative leave for four and a half months without learning anything meaningful about the reason for that leave, Plaintiff submitted a letter of resignation to Defendant Phillips.

165.    Plaintiff resigned from her position in hopes of stabilizing her mental health.

166.    On or about August 5, 2022, Plaintiff received a letter from the Erie County District Attorney advising that she was being investigated for unidentified misconduct.

167.    Plaintiff retained counsel.

168.    In May of 2023, more than fifteen months after she was placed on administrative leave, Plaintiff learned for the first time that the alleged misconduct involved approximately $1,800 of discrepancies in her time records between November 1, 2021 and February 7, 2022.

169.    Plaintiff was offered a plea agreement pursuant to which she would initially enter a plea to a Misdemeanor offense and accept a referral to Mental Health Court.

170.    Pursuant to the plea agreement, if Plaintiff successfully complied with the Mental Health Court referral, the criminal plea would be withdrawn, and she would enter a plea to disorderly conduct, a non-criminal Violation.

171.    In light of the ongoing stress and depression caused by the events described herein, Plaintiff, in consultation with her attorney, therapist, and husband, concluded that it was in her best interest to accept the plea.

172.    On September 15, 2023, Plaintiff was arraigned and processed by the District Attorney's office.

173.    On or about September 26, 2023, Defendant Garcia stated at a press conference that Plaintiff had pled guilty to making false timesheet entries totaling "approximately $1,300."

174.    On information and belief, the amount of money at issue was approximately $1,200.

175.    Plaintiff entered a plea pursuant to the plea agreement on November 14, 2023.

176.    As of the date of this Complaint, Plaintiff has been in full compliance with the terms of the referral to Mental Health Court for nearly a year.

177.    Plaintiff has been assured that she will shortly withdraw her original plea and be allowed to plead guilty to a non-criminal violation.

178.    In May of 2024 Plaintiff began treating with a psychotherapist to help deal with her social isolation and anxiety, in addition to her ongoing treatment with a psychiatrist.

179.    Plaintiff suffers from anxiety and fear much of the time.

180.    In addition to resigning from her position with the County, Plaintiff has lost her legal nurse consulting business.

181.    As of the date of this Complaint, Plaintiff continues to treat for Major Depressive Disorder, Anxiety, and PTSD via medication and therapy.

182.    The actions of Defendants Howard, Greenan, Diina and Balys in excluding Plaintiff from decision making responsibilities, and refusing to work with her in her capacity as Director of the Correctional Health Division demeaned Plaintiff among her colleagues and caused her to suffer extreme mental health harm.

183.    The actions of Defendants Garcia, Cooley, Phillips and Amoia in stripping Plaintiff of the duties contained in her civil service job description and assigning her to quasi-clerical duties demeaned Plaintiff among her colleagues and caused her to suffer extreme mental health harm.

184.    The actions of Defendants Garcia, Cooley, Phillips and Amoia in suspending Plaintiff without an explanation exacerbated the mental health harm to Plaintiff caused by the actions described in ¶¶ 182-183.

185.    The actions of Defendants Garcia, Cooley, Phillips and Amoia in delaying approximately four months before referring the matter to the District Attorney for investigation further exacerbated the mental health harm to Plaintiff caused by the actions described ¶¶ 182-1840.

**FIRST CAUSE OF ACTION: VIOLATION OF 42 USC § 1983**

186.    Plaintiff reasserts and realleges the allegations set forth in ¶¶ 1 through 185 as though fully set forth herein.

187.    From March of 2021 through early February 2022, Plaintiff repeatedly brought to the relevant Defendants' attention violations of the consent decree in 09-cv-849 and of the laws protecting inmates' constitutional and other civil rights.

188.    When Plaintiff's efforts to secure an end to the violations of inmates' rights were unsuccessful, Plaintiff notified representatives of the USDoJ and the SCOC of Defendants' actions.

189.    Plaintiff's notifications to the USDoJ and the SCOC were not made pursuant to her official duties as Director of Correctional Health.

190.    Plaintiff's notifications to the USDoJ and the SCOC were made in her capacity as a concerned private citizen of Erie County who was speaking out on a matter of public concern and importance.

191.    After Plaintiff contacted the USDoJ and the SCOC, Defendants retaliated against Plaintiff by demoting her, stripping her of her administrative duties, and excluding her from communications and meetings relating to her duties as Director of the Division of Correctional Health.

192.    Defendants thereafter placed Plaintiff on an indefinite administrative leave, referred the matter to the District Attorney for investigation, and accepted her resignation, approximately four and one half months after Plaintiff's administrative leave began.

193.    In May of 2023, ten months after Plaintiff resigned, and fourteen months after she was placed on paid administrative leave, the District Attorney finally notified Plaintiff of the nature of the alleged misconduct of which she was accused, and entered into negotiations that ultimately led to Plaintiff accepting a plea agreement nearly two years after Defendants' retaliation against Plaintiff commenced.

194.    Defendants' actions violated Plaintiff's right to freedom of speech under the First Amendment to the Constitution of the United States.

195.    As a result of Defendants' illegal actions, Plaintiff suffered loss of income, damage to reputation, injury to her mental health, loss of enjoyment of life and other pain and suffering justifying an award of damages against said Defendants, plus interest.

**SECOND CAUSE OF ACTION: VIOLATION OF NEW YORK HUMAN RIGHTS LAW**

196.    Plaintiff reasserts and realleges the allegations set forth in ¶¶ 1 through 195 as though fully set forth herein.

197.    Beginning in or about March of 2021, Plaintiff was subjected to a hostile work environment on the basis of her gender by Defendant Diina.

198.    Plaintiff complained of Defendants Diina's actions to Defendant Greenan.

199.    On information and belief, Defendant Greenan took no actions to stop Defendant Diina's harassment, nor to remove Plaintiff from the hostile situation, but merely referred Plaintiff to the County EEO office.

200.    At approximately the same time, Defendant Greenan recommended to Defendant Howard that Defendant Balys be placed in the position of Compliance Officer for which Defendant Balys was not qualified, and modified the Compliance Officer job description to meet Defendant Balys' qualifications.

201.    Defendant Greenan's actions placed Defendant Balys in a position from which Balys could continue the pattern of gender-based harassment and bullying of Plaintiff commenced by Defendant Diina.

202.    Defendants Howard, Greenan, Diina and Balys thereafter excluded Plaintiff from the decision-making process, prevented her from effectively fulfilling the responsibilities of her position, and placed a male subordinate employee in a position that was *de facto* equivalent to Plaintiff's own position.

203.    In 2022, Defendants Garcia, Cooley, Amoia and Phillips officially implemented the *de facto* demotion of Plaintiff referenced in ¶ 202.

204.    Defendants' actions subjected Plaintiff to a hostile work environment and to adverse changes in the terms and conditions of her employment because of her gender in violation of the New York Human Rights Law.

205.    As a result of Defendants' illegal actions, Plaintiff suffered loss of income, damage to reputation, injury to her mental health, loss of enjoyment of life and other pain and suffering justifying an award of damages against said Defendants, plus interest.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter Judgment:

a.      Holding that Defendants have violated Plaintiff's rights under 42 U.S.C. §1983 and the New York Human Rights Law;

b.      Awarding Plaintiff damages to the maximum amount permitted by law for the violation of her First Amendment rights and her right to be free from gender-based discrimination;

c.      Awarding Plaintiff injunctive relief;

d.      Awarding Plaintiff pre-judgment and post-judgment interest to the maximum amount permitted by law;

e.      Awarding Plaintiff attorney's fees and costs to the maximum amount permitted by law; and

f.      Providing such other relief as the Court deems just and equitable.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

Dated:

_____/s/ Lindy S. Korn_____                    _____/s/ Anna Marie Richmond_____
 LINDY S. KORN                                     ANNA MARIE RICHMOND
Attorney for Plaintiff                             Attorney for Plaintiff
22 Washington Street                               2500 Rand Building
9th Floor                                          14 Lafayette Square
Buffalo, NY  14203                                 Buffalo, NY  14203-1295
716-856-5676                                       716-854-1100
lkorn@lkornlaw-law.com                             annamarierichmondesq@gmail.com

# VERIFICATION

State of New York    )
County of Erie     )

  CHRISTA CUTRONA, being duly sworn, states that she is the plaintiff in the above-

referenced action, and that she has read the attached Complaint, and knows the contents thereof,

and further states that the facts alleged therein are true based upon her own personal knowledge,

except for facts alleged on information and belief, and as to those, she believes them to be true.


           _____
           Christa Cutrona

Sworn to before me this _7_ day of
November, 2024


_____
Notary Public

ANNA MARIE RICHMOND
Reg. No. 02RI4836120
Notary Public, State of New York
Qualified in Erie County
My Commission Expires: 1/23, 20 26

29