UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHRISTA CUTRONA,
                              Plaintiff,

                                                            24-CV-01087-LJV

              vs.


TIMOTHY HOWARD, JOHN GARCIA
JOHN GREENAN, WILLIAM J. COOLEY
SANDRA AMOIA, THOMAS DIINA,
MICHAEL PHILLIPS, JAMES BALYS, and
COUNTY OF ERIE,
                              Defendants
_____


**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

LINDY S. KORN                          ANNA MARIE RICHMOND
Attorney for Plaintiff                  Attorney for Plaintiff
22 Washington Street                    2500 Rand Building
9th Floor                               14 Lafayette Square
Buffalo, NY  14203                      Buffalo, NY  14203-1295
716-856-5676                            716-854-1100
lkorn@lkornlaw-law.com                  annamarierichmondesq@gmail.com

**CONTENTS**

TABLE OF AUTHORITIES.................................................................................................iii

INTRODUCTION ........................................................................................................... 1

PLAINTIFF'S NEW YORK HUMAN RIGHTS LAW CLAIM MUST PROCEED ................... 1

A Notice of Claim is Not Required under New York Law ............................................. 1

The Applicable Statute of Limitations is Three Years .................................................. 3

PLAINTIFF'S FACTUAL ALLEGATIONS ESTABLISH A COGNIZABLE CLAIM............... 4

PLAINTIFF'S SECTION 1983 CLAIM STATES A CAUSE OF ACTION................................ 7

Plaintiff's Speech is Protected by the First Amendment.............................................. 7

Plaintiff Sufficiently Alleged a Claim Against Defendants in their Official Capacity ................. 12

Plaintiff Has Sufficiently Pleaded a Claim Against the Individual Defendants ........................... 13

CONCLUSION.............................................................................................................. 14

## TABLE OF AUTHORITIES

## Cases

*Arnold v. Town of Camilus*, 662 F. Supp. 3d 245, 268-269 (NDNY 2023) ................................. 2

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ........................................................... 8, 13

*Barton v. Warren Cty.*, No. 1:19-CV-1061 (GTS/DJS), 2020 U.S. Dist. LEXIS 141128 (NDNY Aug. 7, 2020) ............................................................................................ 2

*Broton v. County of Onondaga*, 83 Misc. 3d 1285(A) (Onondaga Cnty. Aug. 6, 2024) ................ 2

*Connick v. Myers*, 461 U.S. 138, 147 (1983) ............................................................... 8

*DiJoseph v. Erie Cty.*, No. 18-CV-919S, 2020 U.S. Dist. LEXIS 128751, at *25 (WDNY July 21, 2020) ................................................................................................ 2

*Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938) ............................................................ 1

*Felder v. Casey*, 487 U.S. 131, 151 (1988) ................................................................. 1

*Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir. 1993) ........................................................ 13

*Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006) ........................................................... 8

*Gaston v. NYC Dep't of Health Office of Chief Medical Examiner,* 432 F. Supp. 2d 321 (SDNY 2006) ................................................................................................ 2

*Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 414 (1979) ...................................... 7

*Hamilton v. Cty. of Onondaga*, No. 5:15-cv-01333 (BKS/TWD), 2018 U.S. Dist. LEXIS 161647, at *52-54 (NDNY Sep. 21, 2018) ..................................................................... 2

*Koerner v. State*, 62 N.Y.2d 442, 448 (1984) ............................................................... 3

*Margerum v. City of Buffalo*, 24 N.Y.3d 721, 727 (2015) ................................................ 2

*McCormack v. Port Washington Union Free Sch. Distr.*, 214 AD 2d 546 (2d Dept. 1995) .......... 2

*Montero v. City of Yonkers*, 890 F.3d 386, 394 (2d Cir. 2018) ........................................ 11

*Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 307 (1983) .................................... 3

*Naples v. Stefanelli,*  972 F. Supp. 2d 373 (EDNY 2013) ............................................. 2

*Olsen v. Cty. of Nassau*, No. CV 05-3623 (ETB), 2008 U.S. Dist. LEXIS 90426 (EDNY Nov. 5, 2008) ................................................................................................ 2

*Pickering v. Bd. of Educ.*, 391 U.S. 563, 572-575 (1968) .............................................. 7

*Stachura-Uhl v. Iroquois Cent. School Dist.*, 836 F. Supp 2d 147 (WDNY 2011) ................. 2, 11

*Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) ............................................. 13

*Van Cortlandt v. Westchester Cty., No. 07 CIV 1783, 2007 U.S. Dist. LEXIS 80977 (SDNY Oct. 31, 2007)* ............................................................................................ 2

*Weintraub v. Bd. of Educ.*, 593 F.3d 196 (2d Cir. 2010) .............................................. 11, 12

*Wrobel v. Cnty. of Erie*, No. 03-CV-277C(SC), 2004 U.S. Dist. LEXIS 30648  (WDNY Dec. 16, 2004) ................................................................................................ 2

*Zwecker v. Clinch*, 279 AD 2d 572 (2d Dept 2001) ..................................................... 2

**Statutes**

28 USC § 1343 ...................................................................................................... 1

28 USC §§ 1331 .................................................................................................... 1

N.Y. Exec. Law § 297(9) ...................................................................................... 3

**INTRODUCTION**

Plaintiff has filed this action under 42 USC § 1983 and asserted pendent state claims under the New York Human Rights Law.  Defendants have moved to dismiss on the pleadings. In their motion to dismiss Plaintiff's state law claims, Defendants have cited to an inapplicable provision of New York law, and have ignored the rulings of the New York Court of Appeals on the issues they raise.  Their argument in support of dismissing Plaintiff's federal claims ignores the factual allegations of Plaintiff's Amended Complaint that do not support their position.  Accordingly, Plaintiff respectfully requests this Court to deny Defendants' motion in its entirety and direct the Defendants to answer the Amended Complaint.

**PLAINTIFF'S NEW YORK HUMAN RIGHTS LAW CLAIM MUST PROCEED**

**1.  A Notice of Claim is Not Required under New York Law**

Eighty-five years ago, the Supreme Court of the United States established that

> Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State. And whether the law of the State shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern.

*Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).  The *Erie* Doctrine applies to both cases brought in diversity and cases in which a federal court exercises pendent jurisdiction over state law claims.  *Felder v. Casey*, 487 U.S. 131, 151 (1988)

When she filed her Complaint, Plaintiff invoked the Court's federal question jurisdiction under 28 USC §§ 1331 and 1343, and also the Court's supplemental jurisdiction under 28 USC § 1367.  The applicable law governing Plaintiff's Human Rights Claims is the law of the State of New York.

The New York Court of Appeals has held that "a notice of claim need not be filed for a Human Rights Law claim against a municipality." *Margerum v. City of Buffalo*, 24 N.Y.3d 721, 727 (2015).

Many of the cases cited by Defendants in Point I of their Memorandum of Law pre-date *Margerum*, namely *Olsen v. Cty. of Nassau*, No. CV 05-3623 (ETB), 2008 U.S. Dist. LEXIS 90426 (EDNY Nov. 5, 2008); *Gaston v. NYC Dep't of Health Office of Chief Medical Examiner,* 432 F. Supp. 2d 321 (SDNY 2006), *Naples v. Stefanelli,* 972 F. Supp. 2d 373 (EDNY 2013); *Van Cortlandt v. Westchester Cty., No. 07 CIV 1783, 2007 U.S. Dist. LEXIS 80977 (SDNY Oct. 31, 2007)*; *Zwecker v. Clinch*, 279 AD 2d 572 (2d Dept 2001); *McCormack v. Port Washington Union Free Sch. Distr.*, 214 AD 2d 546 (2d Dept. 1995); *Wrobel v. Cnty. of Erie*, No. 03-CV-277C(SC), 2004 U.S. Dist. LEXIS 30648  (WDNY Dec. 16, 2004); *Stachura-Uhl v. Iroquois Cent. School Dist.*, 836 F. Supp 2d 147 (WDNY 2011).

*Hamilton v. Cnty. of Onondaga,* which was decided in 2023, contains no reference to *Margerum* in its discussion of the Human Rights Law claim. *Hamilton v. Cty. of Onondaga*, No. 5:15-cv-01333 (BKS/TWD), 2018 U.S. Dist. LEXIS 161647, at *52-54 (NDNY Sep. 21, 2018). Similarly, *Arnold v. Town of Camilus,* and *Barton v. Warren Cty.* do not address the potential applicability of *Margerum.  Arnold v. Town of Camilus*, 662 F. Supp. 3d 245, 268-269 (NDNY 2023)*; Barton v. Warren Cty.,* No. 1:19-CV-1061 (GTS/DJS), 2020 U.S. Dist. LEXIS 141128 (NDNY Aug. 7, 2020).  *DiJoseph v. Erie Cty.*, No. 18-CV-919S, 2020 U.S. Dist. LEXIS 128751, at *25 (WDNY July 21, 2020) and *Broton v. County of Onondaga*, 83 Misc. 3d 1285(A) (Onondaga Cnty. Aug. 6, 2024),  were not brought under the Human Rights Law, and are not relevant to this issue.

To the extent that the Hamilton, *Arnold*, and *Barton* Courts ignored the Court of Appeals' holding in *Margerum,* the decisions in those cases cannot be relied upon by this Court.

Moreover, Defendants' argument with respect to the necessity of filing a notice of claim against the individual defendants was rejected by the *Hamilton* Court, which held that the Plaintiff therein was not required to serve a notice of claim against the individual defendant because "the racial comments to which the individual Defendants subjected Plaintiff were not within the scope of their employment—indeed, these acts were prohibited." *Id.* at *54. Here all of the named individual defendants have been sued in their official and personal capacities, and, as such no notice of claim is required as to each of them.

### 2.  The Applicable Statute of Limitations is Three Years

Defendants' statute of limitations argument is based upon New York's General Municipal Law.  Their argument ignores the holdings of the New York Court of Appeals that the statute of limitations for actions brought in a court of appropriate jurisdiction under the New York Human Rights Law is three years. N.Y. Exec. Law § 297(9); *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 307 (1983); *Koerner v. State*, 62 N.Y.2d 442, 448 (1984). Plaintiff's original complaint was filed on November 8, 2024 (Item No. 1), and properly encompasses actions and events that occurred after November 8 2021  Even relying on Defendants' selective recitation of the facts of the Amended Complaint, discussed in detail, *below*, it is clear that the significant actions and events of which Plaintiff complains occurred within the three-year statute of limitations.

**PLAINTIFF'S FACTUAL ALLEGATIONS ESTABLISH A COGNIZABLE CLAIM**

In their Memorandum of Law, Defendants have recited in detail most of the factual allegations of Plaintiff's Amended Complaint.  However, as is discussed in detail *below,* the factual allegations they omitted from that recitation are the factual allegations that undermine their legal arguments. For the convenience of the Court, Plaintiff recites herein the specific allegations that Defendants have omitted from their Statement of Facts.  The significance of these allegations to evaluating Plaintiff's § 1983 claim is discussed in the next section.

- Defendants omit the factual allegations in ¶¶ 15-22 concerning the litigation and consent decree in 09-cv-849, federal litigation brought against the County of Erie by the U.S. Department of Justice alleging that conditions in the Erie County Holding Center and the Erie County Correctional Facility violated the constitutional rights of the persons confined therein.

- Defendants omit the allegations in ¶¶ 28, 32, and 33 which describe Plaintiff's hiring and promotion to the position of Director of the Correctional Health Division within the Sheriff's Department.

- Defendants omit the description of Plaintiff's duties as Director of Correctional Health in ¶ 34, which <u>do not</u> include reporting on conditions within the Holding Center or the Correctional Facility to any outside or oversight entities; and omit the allegations in ¶¶ 43 and 44 that Plaintiff reported to the Under Sheriff, John Greenan and that the Compliance Officer, Michael Reardon, was responsible for reporting to the US Department of Justice.

- Defendants omit ¶¶ 41 and 54 which assert that Plaintiff was the only woman on the Sheriff Command Staff from 2017 through December of 2021.

4

- Defendants omit ¶ 51, which alleges that after Mr. Reardon was removed as Compliance Officer, Plaintiff sent a 14-page letter to Defendant Howard on March 31, 2021, describing the accomplishments of the Correctional Health Division over the previous six years and arguing that Reardon's removal jeopardized the future effectiveness of the Correctional Health Division.

- Although Defendants recite ¶¶ 55-59 and 61-66, which describe certain aspects of Defendant Diina's gender-based hostile treatment of Plaintiff, they omit ¶ 60 which describes Diina's exclusion of Plaintiff from policy discussions involving health care. Moreover, in their footnote 2, on page 5, Defendants conflate the allegation in ¶ 66 that Defendant Diina began inviting Plaintiff's male subordinate to meetings in place of Plaintiff, with the allegation in ¶ 90 that thereafter Defendant Greenan began inviting the same male subordinate to Command Staff meetings.

- Defendants omit ¶ 79, which alleges that immediately after Defendant Greenan gave Plaintiff a direct order to "shut [her] mouth" and not communicate with the State Commission of Corrections, Greenan ignored Plaintiff's medically supported recommendations and reports.

- Defendants also omit ¶¶ 81 and 82 which describe Plaintiff's advice to Defendants Greenan that Defendant Balys was not qualified by skills or experience for the position of Compliance Officer, and ¶ 84 that asserts that Defendant Greenan modified the job description for the position to match Defendant Balys' qualifications.

- Defendants omit ¶¶ 92-94 which allege that on July 7, 2021, Plaintiff advised Defendants Balys and Greenan that she had noticed a pattern of apparent violations of the Fourth and

5

Eighth Amendments and 34 USC § 3401, et seq. based upon inmates' reports to medical staff and that Greenan and Balys ignored her reports.

- Defendants omit the eleven sub-paragraphs of ¶ 96 that detail the concerns she reported to Greenan and Balys from July to September 2021, and omit ¶ 97 that asserts that Defendants did not address her concerns.

- Defendants omit ¶ 103 which explains the substance of Plaintiff's communication to the Department of Justice attorney Plaintiff contacted in October of 2021, and asserts that Plaintiff brought the concerns to the Department of Justice pursuant to her medical oath.

- Defendants omit ¶¶ 114 and 115, which describe Plaintiff's efforts to alert Defendants Garcia and Amoia to the violations of the Consent Order in 09-cv-849 and the significant increase in inmate emergency room visits during the previous year.

- Defendants omit ¶ 118, which describes how the reorganization of the Jail Management Division in 2022 violated the Consent Order in 09-cv-849.

- Defendants omit ¶¶ 124-129 which detail Plaintiff's further efforts to advise Defendants that the reorganization of the Jail Management Division and the Correctional Health Division violated the Consent Order in 09-cv-849, and the actions taken by Defendants to functionally demote Plaintiff.

- Defendants also omit ¶¶ 133-142 and 144-151 which describe Plaintiff's efforts to reverse the actions of the incoming administration, the impact of the new administration's actions on her mental health, her admission to in-patient treatment, and her post-release treatment and continuing care.

- Defendants omit ¶ 155 which alleges a statement against interest by Defendant Balys.

- Defendants omit ¶¶ 158-163, which describe an uncounseled interview of Plaintiff by an Investigator from the District Attorney's office, who did not advise Plaintiff that Plaintiff was under investigation for a potential crime.

- Defendants omit ¶¶ 173-174 which describe a press conference at which Defendant Garcia misstated the details of the charges against Plaintiff, exaggerating the amount of allegedly stolen time at issue.

- Defendants omit ¶¶ 178-185, which describe Plaintiff's damages.

## PLAINTIFF'S SECTION 1983 CLAIM STATES A CAUSE OF ACTION

**1. Plaintiff's Speech is Protected by the First Amendment**

Public employees have a First Amendment right to speak publicly on matters of public concern even when the employee's speech is critical of the actions of the public employer. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 572-575 (1968). However, the public employee's First Amendment protection is limited by the State's interest in regulating its employees' speech.

> The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

*Id.*, at 568. A public employee does not "forfeit[ ] [her] protection against governmental abridgment of freedom of speech if [s]he decides to express [her] views privately rather than publicly." *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 414 (1979). Moreover,

> The First Amendment does not protect speech and assembly only to the extent it can be characterized as political. "Great secular causes, with smaller ones, are guarded.". . . [However,] when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is

7

> not the appropriate forum in which to review the wisdom of a
> personnel decision taken by a public agency allegedly in reaction
> to the employee's behavior

*Connick v. Myers*, 461 U.S. 138, 147 (1983) (citations omitted).

The rationale for the Court's First Amendment jurisprudence in the context of

government employment is well established:

> So long as employees are speaking as citizens about matters of
> public concern, they must face only those speech restrictions that
> are necessary for their employers to operate efficiently and
> effectively.
>
> The Court's employee-speech jurisprudence protects, of course, the
> constitutional rights of public employees. Yet the First interests at
> stake extend beyond the individual speaker. The Court has
> acknowledged the importance of promoting the public's interest in
> receiving the well-informed views of government employees
> engaging in civic discussion

*Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006).

The *Garcetti* decision provides relevant guidance for the evaluation of Plaintiff Cutrona's

claim:  The <u>controlling factor</u> in Plaintiff Ceballos' case is that his expressions were made

pursuant to his duties as a calendar deputy. *Id.* at 421 (emphasis added).

Here, as in *Garcetti*, it is necessary to evaluate the relevant facts in order to determine

whether Ms. Cutrona's speech was protected by the First Amendment.

Viewing the allegations in the Amended Complaint as true, as the Court must on a motion

pursuant to Fed. R. Civ. P. 12(b)(6), *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), Plaintiff has

alleged the following:

- Plaintiff's duties did not include direct interface with the US Dept. of Justice or the NYS

  Commission of Correction.  Item 1, ¶ 33(a) – (h).

- Serious problems with treatment of inmates by staff at the Erie County Holding Center and Correctional Facility were manifested to medical personnel, when the inmates affected by Correction Staff's actions sought medical care in response to staff action that was otherwise unreported. Item 1, ¶¶ 61-62, 74, 95.

- Like the Plaintiff in *Givhan,* Plaintiff Cutrona initially attempted to bring what she believed to be violations of inmates' Fourth and Eighth Amendment and federal statutory rights to the attention of Defendants Greenan, Howard, Balys, Diina, Amoia and Garcia, although not required by her duties. Item 1, ¶¶ 63-65. 93-99, 115.

- After Plaintiff's internal efforts to secure redress for the inmates went unheeded, she attempted to bring her concerns to the USDoJ. Item 1, ¶¶ 101-104.

- After Plaintiff communicated her concerns to the Defendants, she was ostracized, demoted, and criminally prosecuted. Item 1, ¶¶ 100, 108, 110, 121-123, 168-175.

- Plaintiff was ostracized, demoted and criminally prosecuted because of her speech.  Item 1, ¶¶ 100, 108, 121-123, 168-175.

The matters on which Plaintiff spoke were indisputably matters of public concern. Conditions of confinement in the Erie County Correctional Facility and Holding Center were and continue to be raised in litigation before the state and federal courts, and are frequent topics of reporting in the news media.  Among the issues that Plaintiff attempted to bring to public attention were:

- Correction Division staff's refusal to permit medical staff to administer prescribed medications to inmate, Item 1, ¶ 61;

- numerous complaints of beatings by Correction Staff, denial of food for several days, denial of bedding, placement in cells fouled with feces and urine, denial of showers and

9

changes of clothing for up to a week, and other constitutional and civil rights violations at the Holding Center relating to a disturbance in May 2021; *Id.*, ¶ 74;

- a pattern of inmates reporting constitutional and civil rights violations (including excessive use of force, and cruel and unusual punishment) to medical staff (who were documenting those reports in the medical records), but that there were no corresponding formal investigations of the complaints being undertaken by the Professional Standards Division, *Id.*, ¶ 92;

- inappropriate uses of OC spray (pepper spray) and the restraint chair by Correction Staff, *Id.*, ¶ 93;

- a significant increase in the number of inmate-on-inmate assaults and hospitalizations for injuries sustained during the incidents, increased hospitalizations due to ingestion of foreign bodies and contraband, failure to follow legally mandated protocols for providing medical care in response to Prison Rape Elimination Act (34 USC § 3401, et seq.) complaints, and failure to comply with guidelines governing provision of mental health care, *Id.*, ¶ 96; and

- a doubling in inmate emergency room visits between 2020 and 2021 despite significant reductions in the total jail population, *Id.*, ¶ 98.

Contrary to Defendants assertion, Plaintiff has not "admitted" that her speech was pursuant to her duties as the Director of Correctional Health. Not only was Plaintiff's speech not required by or included in her job description, it also did not concern Plaintiff's official duties. The scope of Plaintiff's duties throughout her employment was limited to the delivery of health care to inmates confined by the Sheriff.

She was not involved in the work of Correction Staff, and had no authority with respect to the Jail Management Division. As is set forth in detail in Plaintiff's Amended Complaint, she sought to publicize the failure of employees of the Jail Management Division to perform their duties in a manner that complied with the federal constitution and laws.

Defendants seek to characterize Plaintiff's actions as made pursuant to her job duties in reliance on several cases that stand for the proposition that such complaints are not protected by the First Amendment, including *Stahura-Uhl v. Iroquois Cent. Sch. Dist.*, 836 F. Supp. 2d 132 (WDNY 2011), which, in turn relies upon the Court of Appeals for the Second Circuit's decision in *Weintraub v. Bd. of Educ.*, 593 F.3d 196 (2d Cir. 2010).

Unlike the teachers in *Stachura-Uhl* and *Weintraub*, Plaintiff Cutrona was not addressing issue that were "part and parcel of [her] concerns about [her] ability to properly execute [her] duties." *Weintraub*, 593 F. 3d at 203. Plaintiff's duties related to the delivery of medical care to inmates incarcerated by the Sheriff. To the extent that the inmates' needs for medical care arose because of unconstitutional or illegal actions by members of the Jail Management Division, such actions were not within the scope of Plaintiff's execution of her duties.

Plaintiff could have merely continued to stay in her own lane and perform her duties pursuant to her job description and the directions of her superiors. Instead, as is alleged in the Amended Complaint, she chose to attempt to bring violations of inmates' rights to the attention of persons who had the authority to correct those violations. Even if Ms. Cutrona's speech was "tangentially related to [her] job responsibilities[,] [t]hat fact is not dispositive as a matter of law." *Montero v. City of Yonkers*, 890 F.3d 386, 394 (2d Cir. 2018).

Like the plaintiff in *Givhan*, *supra*, which is distinguished by the Court of Appeals in the *Weintraub* decision, "the grievance she aired was not in furtherance of the execution of one of

11

her core duties." *Weintraub, Id.*  As the Court wrote, "Givhan's grievance concerned the general impression that blacks *sic* students might take away from the staffing of non-teaching positions; Weintraub's grievance, in contrast, concerns the administration's refusal to discipline a student who threw books at Weintraub during class." *Id.*  Here, Plaintiff Cutrona's "grievance" concerns the rights of persons incarcerated in the County Jails to be free from violations of their Fourth and Eighth Amendment rights.  Defendants' efforts to trivialize the scope and significance of the issues Plaintiff raised should be rejected by this Court.

**2. Plaintiff Sufficiently Alleged a Claim Against Defendants in their Official Capacity**

Plaintiff has sued the defendants in their personal and official capacities.   Her official capacity claim against the named individuals requires that she allege the existence of an official policy or custom.  Plaintiff has sued the two individuals who held the elected positions of Sheriff during the events at issue, and several of their highest-ranking deputies.  She has alleged that these officials ignored her efforts to bring constitutional violations to their attention.  She has also alleged that the injuries she suffered after Defendant Garcia took office were taken at his direction, as stated baldly by First Deputy Superintendent Amoia: "The Sheriff gets what the Sheriff wants." Item 1, ¶ 125.  This is a clear statement that the Sheriff set policy and that the actions of which Plaintiff complains were taken in furtherance of that policy.

In her Amended Complaint, Plaintiff has explicitly alleged that Defendants Howard and Garcia were and are the chief policy makers for the Sheriff's Department within the County of Erie (Amended Complaint ¶¶ 7-8, 205, 207).  As policy makers, their actions are attributable to the County. *Frank*, *supra,* 1 F.3d at 1327.  Defendants' argument that Plaintiff has failed to successfully plead a *Monell* claim against the individual defendants must be denied in light of Plaintiff's factual allegations.

12

As the Court of Appeals for the Second Circuit has observed in a case where an Assistant District Attorney sued the District Attorney as her employer, the question "of whether Relin [the District Attorney defendant] had final policymaking authority is a question of state law and is an issue to be decided by the court." *Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir. 1993).

**3.   Plaintiff Has Sufficiently Pleaded a Claim Against the Individual Defendants**

The essential requirement of a Section 1983 claim against a governmental official is "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (citing *Iqbal, supra* at 676).  Here, Plaintiff has described in detail the actions of each named Defendant that she contends contributed to the violation of her First Amendment rights.

In addition to suing the Sheriffs, Plaintiff has sued the highest ranking subordinates of both Sheriffs who had authority over the County's jails.  She has alleged additional facts that evidence the truth of First Deputy Superintendent Amoia's comment, namely, Defendant Greenan's comment in 2022 that he was no longer part of the decision-making process.  *Id.*, ¶ 134.  This statement was an acknowledgment that Greenan had previously been a part of the decision-making process, and a statement that the process had shifted to Defendants Amoia, Cooley and Phillips in 2022.  Plaintiff has alleged that Defendant Balys stated in in the Sheriff's main office that he was going to do everything in his power to get rid of her, *Id.* ¶ 155, and has described numerous instances of Balys' harassment of her. *Id.*, ¶¶ 87, 91 126, 201, 202.  She has similarly alleged direct action by Defendants Cooley and Phillips. *Id.,* ¶¶ 121-137.

The direct actions of each individual defendant, as described in detail in the Amended Complaint, contributed to the retaliation Plaintiff suffered in response to her efforts to secure a

safe and healthy environment for the inmates confined to the custody of the Sheriff of Erie County.

### CONCLUSION

Plaintiff has alleged that she, who was hired as a medical staffer in the Erie County jails was compelled by the strictures of her medical oath to step outside the parameters of her official duties and attempt to seek redress on behalf of inmates incarcerated in the County jails when she observed their federal constitutional and statutory rights being violated by Correctional Staff. For her efforts, she was demeaned, demoted, disrespected, constructively discharged from her position, and, in a further attempt to silence her, criminally prosecuted.

For the reasons discussed herein, Plaintiff respectfully requests this Court to deny Plaintiff's motion and direct the Defendants to answer the Amended Complaint.

Dated:   March 17, 2025

_/s/ Lindy Korn_                                 _/s/ Anna Marie Richmond_
Lindy S. Korn, Esq.                             Anna Marie Richmond, Esq.